**OREGON CHROME MINES, Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

No. 12856.

United States Court of Appeals
Ninth Circuit.

Nov. 2, 1951.

Wm. B. Murray, Portland, Or., for petitioner.

Theron L. Caudle, Asst. Atty. Gen., Ellis N. Slack, Hilbert P. Zarky and Carolyn Just, Sp. Assts. to Atty. Gen., for respondent.

Before STEPHENS and ORR, Circuit Judges, and McCORMICK, District Judge.

ORR, Circuit Judge.

Appellant, Oregon Chrome Mines, Inc., hereinafter referred to as taxpayer, is the owner of certain mining claims situate in Josephine County, Oregon. These claims contain chrome ore, a strategic metal. In peace time the metal is imported because it cannot be mined at a profit in competition with production in certain foreign countries.

Congress, recognizing the necessity of providing an incentive to spur production in war time, enacted § 731 Internal Revenue Code.[1]

1. Internal Revenue Code: Sec. 731, as added by Sec. 226(a), Revenue Act of 1942, c. 619, 56 Stat. 798. "Corpora- tions engaged in mining or strategic minerals.

"In the case of any domestic corpora-

During World War I mining claims covering much the same ground as that covered by mining claims with which we are concerned in the instant case were located and developed to a considerable extent. Some time after the conclusion of the first world war the then owners permitted the claims to lapse and revert to the Government. This mining ground was subsequently located and, on June 24, 1941, was transferred to taxpayer. Subsequent to acquiring title to the claims and prior to April 12, 1942, taxpayer engaged in active development of its mining claims. This work consisted of tunnel work, drifting, raising and cross-cutting. No direct evidence appears in the record as to whether the development work carried on by taxpayer resulted in the exposure of chrome ore in sufficient quantities to pay for its extraction and for further necessary development. The reasonable conclusion to be drawn from the circumstances is that it did not, because on April 14, 1942, taxpayer leased the property to one William S. Robertson, largely because it was unable to finance further development. Such a situation would hardly obtain with paying ore in sight in any appreciable quantity. Under the terms of the lease the lessee entered into possession of the property, assumed full responsibility for all expenses of operation and the furnishing of all equipment, tools and machinery. Lessee was to pay lessor taxpayer 20 per cent of all amounts he received from the sale of chrome ore he developed and extracted (some modifications as to royalty payments were later made) so, in a practical sense from the time lessee took possession of the mining claims, he, the lessee, became the miner and the taxpayer became the royalty receiver. In 1944 taxpayer received royalties. It claimed the benefits of § 731 on the ground that it was engaged in mining in 1944, as that term is used in said section, and that its royalty payments were attributable to mining. A divided tax court sustained the Commissioner's determination that taxpayer was not entitled to the benefits of said § 731.

That the royalty income falls within that portion of the statute dealing with income attributable to mining there is no dispute. We find ourselves, therefore, confronted with the interpretation of that portion of the statute granting exemption to "any domestic corporation engaged in the mining of * * * chromite, * * *." Taxpayer takes the position that the statute does not require that the corporation be engaged in mining in the year the royalties are received; that if in a previous year or years the corporation had engaged in mining, its character as such, carried over to subsequent years. Hence, taxpayer urges that the work it performed in 1941–1942 gave it exemption for royalties paid to it in 1944 by lessee, even though realized from mining which the lessee performed and in which taxpayer took no active part. We think taxpayer, in urging this position is confusing the term "engaged in the *mining of * * * chromite * * *"* with being engaged in the *mining business*. This is deducible from the argument taxpayer makes that during the years in question it engaged in other mining enterprises. Taxpayer complains that to narrow the question, as did the tax court, to whether it was engaged in the mining of chromite in 1944 is not justified. We think otherwise, because the mining activities resulting in the profits on which royalty was paid were conducted in 1944. The statute does not say that one engaged in mining is exempt, nor does it say that one merely engaged in development work in the quest for chromite is exempt. This development must result in the finding and extraction of chrome ore. It is then that the statute has significance. Unless chrome ore was extracted and sold no tax would accrue to which the exemption would apply. You

tion engaged in the mining of * * * chromite, * * * the portion of the adjusted excess profits net income attributable to such mining in the United States shall be exempt from the tax imposed by this subchapter. The tax on the remaining portion of such adjusted excess profits net income shall be an amount which bears the same ratio to the tax computed without regard to this section as such remaining portion bears to the entire adjusted excess profits net income." 26 U.S.C.A. § 731.

cannot mine chrome ore until you find it. In 1941–1942 taxpayer did not find chromite. Subsequent to April 1942 the lessee's efforts resulted in the exposure of chrome ore and the lessee, not the lessor, mined it.

Taxpayer cites an interpretation placed on § 304(c) of the Revenue Act of 1921, 42 Stat. 273, by the Committee on Appeals and Reviews to the effect that income derived by a taxpayer-lessor under a "tribute lease" system of mining is income derived from mining within the meaning of the statute as supporting his position. Section 304(c) read in part: "In the case of any corporation engaged in the mining of gold, the portion of the net income derived from the mining of gold shall be exempt from the tax * * *." Quite a different situation was presented by the "tribute lease" system. The corporation involved was actively engaged in operating a portion of its property. Other portions were operated by lessees. Under the "tribute lease" system a certain area of the mine, such as a part of a drift, or stope, was turned over to individual miners or a group of miners who extracted the ore found by them in their operations. The corporation furnished all the large tools used in the extraction of ore, furnished the compressed air, did the hoisting, hauled the ore to the place of disposition and exercised general supervision over the mining operations. Such activity is essentially one in which the corporation is engaged in mining and is clearly distinguishable from one wherein the owner does no more than to stand by and share in the fruits of the labors of others who are compelled to assume the risk and defray the expenses of all operations.

We are quite ready to agree with taxpayer in his assertion that the meaning of the word "mining" is not limited to extraction of ore from the earth as that term is generally understood but the word as used in § 731 has that exact limitation because it says "engaged in the mining of * * * chromite * * *." Chromite is ore. In extracting the ore you mine it, and you must first mine the ore and dispose of it before you have profits on which a royalty is paid.

We think support for our views is found in the fact that Congress in enacting that portion of the Excess Profits Act of 1950 which relates to corporations engaged in the mining of strategic minerals saw fit to include a separate subdivision (d) of § 450 in order to bring a lessor corporation within the Act.[2] This seems to be a congressional recognition that no such exemption had theretofore existed.

The decision of the Tax Court is affirmed.

2. See Excess Profits Tax Act of 1950, § 450(d), 1950 U.S.Code Congressional Service, p. 1157, 26 U.S.C.A. § 450(d).