**UNITED MERCURY MINES COMPANY, a corporation, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 15528.**

United States Court of Appeals Ninth Circuit.

Feb. 3, 1958.

John A. Carver, Jr., Dale Clemons, Boise, Idaho, for petitioner.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Carolyn R. Just, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before STEPHENS, Chief Judge, and ORR and HAMLEY, Circuit Judges.

ORR, Circuit Judge.

Relying on Oregon Chrome Mines, Inc. v. Comm'r, 9th Cir., 1951, 192 F.2d 783, the Tax Court of the United States sustained a determination of the Commissioner of Internal Revenue, hereafter commissioner, against United Mercury Mines, Inc., a corporation, hereafter taxpayer, that the claim of taxpayer that it was wholly exempted from payment of excess profits taxes for the year 1944, in the sum of $113,453.68, was invalid. The claim of taxpayer was based upon its belief that it was a "domestic corporation engaged in the mining of * * * tungsten * * *" within the meaning of 1939 Internal Revenue Code § 731, Revenue Act of 1942, § 226(a), 56 Stat. 798, 26 U.S.C.A. Excess Profits Taxes, § 731.[1] Recognizing that Oregon Chrome is contrary to the position it takes, taxpayer asserts that the decision reached therein is erroneous and asks us to overrule it. We have reexamined Oregon Chrome Mines, Inc. v. Comm'r in the light of the earnest and forceful argument presented by taxpayer, but are not persuaded that the decision there reached is erroneous.

In addition, there appears in the instant case a crucial situation not present in the Chrome case. It will be noted that the relationship of the parties in the Chrome case was that of lessor and lessee. In the instant case it is that of vendor and vendee and presents the rather novel situation of a vendor claiming that because it receives its purchase price out of proceeds realized by the vendee from ore mined by the vendee, the vendor is engaged in mining within the meaning of the statute. While we admit that the conveyance from taxpayer to the Bradley Mining Company is rather unique, it is in all respects a complete transfer of title. It reads in part:

"That the said United [petitioner] for and in consideration of the royalty hereinafter agreed to be paid by Bradley * * * has Granted, Bargained, Sold, and Assigned, and does by these presents grant, bargain, sell and assign, unto Bradley * * * all of the following described lode and placer mining claims situate in the Yellow Pine Mining District, Valley County, State of Idaho, * *

"Together with the personal property situate upon said mining claims;

"Together with all millsites, power plants, transmission lines, dams, reservoirs, mills, dwellings, buildings, structures, water rights, tail races, tailing sites, tailing dams or easements * * * To Have and to Hold, subject to the royalty herein reserved and retained by United, all and singular the said premises, together with the appurtenances and privileges thereunto incident, unto the said Bradley, its successors and assigns, forever.

\* \* \* \* \* \*

1. "§ 731. In the case of any domestic corporation engaged in the mining of * * * tungsten * * * the portion of the adjusted excess profits net income attributable to such mining in the United States shall be exempt from the tax imposed by this subchapter. The tax on

the remaining portion of such adjusted excess profits net income shall be an amount which bears the same ratio to the tax computed without regard to this section as such remaining portion bears to the entire adjusted excess profits net income."

"For and in consideration of the premises * * * Bradley * * * does hereby covenant, promise and agree to pay to United * * * a royalty of five per cent (5%) on all net smelter returns, net revenue, and net mint returns, as defined herein * * * ; the payment of said five per cent (5%) royalty to begin with the first returns received on concentrates shipped from Cascade, Idaho, after Midnight, December 31, 1941, and to continue thereafter for nine hundred and ninety-nine (999) years and as long thereafter as minerals, ores or values shall be extracted, mined or taken from the above-described property * * *.

* * * * * *

"It is agreed that the time, amount, extent and manner of conducting mining operations and development work upon or in the above-described mining claims shall be in the sole discretion of Bradley * * * and that the failure of Bradley to mine shall not be held to be a condition subsequent defeating the conveyance made hereby.

"Anything in this agreement contained to the contrary notwithstanding, it is the intention of the parties to this agreement that the full ownership, possession and control of all the properties above described, * * and all of the personal property acquired and/or used on or in connection with the operation and development of the above-described properties, shall be vested in Bradley, and the United shall have no interest in fee in or to said properties, or in and to any of the personal property acquired and/or used in connection with the operations and development of said properties; * * *."

Bradley had complete control of the property and conducted the tungsten mining operations on the Stibnite properties in 1944. It erected buildings in which were housed power generating equipment and a concentration plant, as well as other needed buildings in which to house equipment and machinery. Bradley in its operations extracted the ore, made the necessary transportation from mine to reduction plant, sold the ore and received payment from the purchaser. Taxpayer stood by and collected its share of the agreed purchase price in the form of a certain percentage of the net profits derived from mining by Bradley of the Stibnite claims.

There is a suggestion in taxpayer's argument that because it was engaged in actual mining prior to the taxable year in question and was, during the taxable year, engaged in mining on properties other than the Stibnite claims, it was entitled to the claimed exemption. We think not. The profits received by Mercury from Bradley came from Bradley's mining of the Stibnite claims. We are confined to a consideration of this operation in determining taxpayer's right to the exemption. We agree with the Tax Court that taxpayer "was not engaged in the mining of tungsten during the taxable year 1944 within the purview of section 731 of the Internal Revenue Code of 1939" and therefore the decision of the Tax Court is affirmed.

Affirmed.